**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **EBONY RESPRESS,** | : | |
| Plaintiffs, | : | Case No. |
| | : | Hon. |
| v. | : | |
| **GOOGLE, LLC,** | : | |
| Defendant. | : | |

**COMPLAINT AND JURY DEMAND**

Plaintiff Dr. Ebony Respress, by and through her attorneys, for her Complaint

against Defendant, Google LLC, states as follows:

**INTRODUCTION**

1. Plaintiff Dr. Ebony Respress is a public health expert, sociologist, and

health technology strategist with a distinguished record of leadership in data-driven

health equity initiatives. She holds a Doctorate in Sociology with a concentration in

Health and Social Stratification from Georgia State University.

2. Google recruited Dr. Respress to become Health Equity Program

Manager for the Google Health Equity Team. Before joining Google, Dr. Respress

led multimillion-dollar health equity programs at a premier medical school known

for health equity expertise and served as a lead epidemiologist and subject matter

expert at a federal agency.

3. At Google, as Health Equity Program Manager, Dr. Respress organized transformative initiatives integrating health equity into Google's product strategy, including features addressing Medicaid search features and personal health generative AI products.

4. Dr. Respress' career trajectory reflected a consistent pattern of achievement, impact, and upward mobility—until she encountered unlawful discrimination at Google that derailed her progress and ultimately resulted in her termination.

5. Dr. Respress, a former employee of Defendant Google, asserts claims for willful disability discrimination and retaliation in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA").

## PARTIES

6. Plaintiff Dr. Respress is an individual who resides in Scottdale, Georgia.

7. Defendant Google is a foreign limited liability company licensed to conduct business in the State of Georgia.

8. At all times relevant to this action, Defendant conducted business, maintained facilities, and derived substantial revenue in the State of Georgia and is subject to the jurisdiction and venue of this Court.

9. Defendant may be served through its registered agent, Corporation Service Company, 2 Sun Court, Suite 400 Peachtree Corners, GA, 30092.

## JURISDICTION AND VENUE

10. This Court has original jurisdiction over Dr. Respress' claims arising under the ADA as they present federal questions pursuant to 28 U.S.C. § 1331 and § 1343(a).

11. This Court is a proper venue for Plaintiff's claims under 28 U.S.C. § 1391(b) and (c), as a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

12. Plaintiff has satisfied all administrative prerequisites to perfect her claims of disability discrimination and retaliation under the ADA. Specifically, she timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

13. Plaintiff received the Notice of Right to Sue from the EEOC for her claims within the last ninety days.

## FACTUAL ALLEGATIONS

14. Google, LLC is one of the largest technology companies in the world, with businesses specialties that include online advertising, search engine technology, cloud computing, consumer electronics, and artificial intelligence.

15.    Dr. Respress graduated from Georgia State University in 2022 with a Doctorate in Sociology.

16.    Dr. Respress began her employment with Defendant in April 2022, as Health Equity Program Manager working with the Health Equity team.

17.    When Dr. Respress joined Google, she promptly disclosed to her then-manager, the Director of Health Equity, that she has neurodiversity-related disabilities—specifically, that she is Autistic and has Attention-Deficit/Hyperactivity Disorder ("ADHD").

18.    Dr. Respress requested the following accommodations for her disabilities: a flexible schedule, shorter meetings, the use of captioning and transcription for meetings, and support from the team with notetaking and consistent communications through written correspondence.

19.    Dr. Respress' accommodation request was reasonable and did not present an undue burden on Google.

20.    Dr. Respress' manager agreed to allow her to work with all of her accommodations.

21.    With these accommodations, Dr. Respress excelled in her role.

22.    While working with Dr. Horn, Dr. Respress received uniformly positive performance reviews and feedback on her job performance.

23.    In the Winter of 2023, there was a reorganization of the program managers on the Health team. As a result, Dr. Respress had a new manager, Rachel Smith, Director of Strategy and Operations, and then in Summer 2024 the Health Equity team had a new Team Lead, Heather Cole-Lewis.

24.    Because Dr. Respress' primary job responsibility was to manage the Health Equity programs by facilitating and tracking progress on research, product, and partnerships, the Team Lead of the Health Equity team acted as a secondary manager of Dr. Respress.

25.    Following these leadership changes, Ms. Smith and Dr. Cole-Lewis began disregarding Dr. Respress's disability accommodations. Specifically, Dr. Cole - Lewis: (1) refused to communicate with Dr. Respress in writing on a regular basis, stating it was too burdensome; (2) disparaged Dr. Respress' accommodation for shorter meetings by complaining to others that Dr. Respress "disliked" long meetings; and (3) prohibited the use of Gemini transcription tools during team and individual meetings.

26.    Ms. Smith and Dr. Cole Lewis also harassed Dr. Respress based on her disabilities through using ableist language to critique Dr. Respress' performance. For instance, they complained that Dr. Respress' accommodations equated to needing her "hand held" and that she needed to engage in "active listening" in her role.

27.    Dr. Cole-Lewis excluded Dr. Respress from meetings. When Dr. Respress asked why she was being excluded, Dr. Cole-Lewis explained that, because Dr. Respress needed help following conversations, an allusion to her disability accommodations, she decided to leave her out of these meetings entirely and just share the notes from them. This was unmistakable harassing and discriminatory conduct based on Dr. Respress' disability

28.    Because both Ms. Smith and Dr. Cole-Lewis refused to follow Dr. Respress' previously approved disability accommodations, in October 2024, Dr. Respress contacted Defendant's disability accommodations department and requested that they enforce her existing accommodations.

29.    Inexplicably, the disability accommodations department also refused to acknowledge Dr. Respress' previously approved accommodations under which she had been working for two years. Instead, the department required Dr. Respress to submit a new accommodations request.

30.    Dr. Respress submitted all of the requested paperwork to the disability accommodations department.

31.    After the accommodation team's review, Dr. Respress was granted the following accommodations: 1) remote work status; 2) 5-10 minute breaks per hour; 3) flexible schedule with 8:00 am to 3:00 pm work schedule; 4) written priorities, expectations, and feedback via email from manager with input from Team Lead; 5)

the use of Gemini Transcripts in meetings; 6) noise canceling headphones; 7) noise buffering earplugs; and 8) 37" computer monitor.

32.    However, the accommodations department conditioned the transcription accommodation on every meeting participant agreeing to such transcription.

33.    Ms. Smith and Dr. Cole-Lewis refused to agree to the use of Gemini Transcripts during their individual meetings with Dr. Respress. They claimed that they were "uncomfortable" with the existence of a written transcription of their meetings with Dr. Respress.  In November 2024, Dr. Cole-Lewis began refusing to allow Dr. Respress to use transcripts in team meetings as well. They gave no further reasoning for their refusal to accommodate Dr. Respress.

34.    Defendant encouraged and supported this unlawful refusal to accommodate Dr. Respress.

35.    The refusal by Ms. Smith and Dr. Cole-Lewis to allow Dr. Respress to transcribe their meetings amounted to a complete failure to engage in the interactive process.

36.    An interactive process cannot be conducted in good faith if it can be thwarted by a manager unreasonably withholding an approved accommodation.

37. Despite repeated requests from Dr. Respress, Defendant provided no explanation to support its failure to accommodate Dr. Repress through the use of transcription software.

38. This transcription accommodation was feasible, reasonable, and would allow Dr. Respress to complete the essential functions of her position.

39. Indeed, she had worked under this accommodation with her prior manager for approximately two years.

40. Defendant allowed Dr. Respress' managers to unilaterally deny an otherwise reasonable accommodation without requiring any explanation.

41. In the new year, Ms. Smith and Dr. Cole-Lewis continued their discriminatory actions towards Dr. Respress.

42. In January 2025, Ms. Smith informed Dr. Respress that her job performance needed to improve immediately or she would face termination. Ms. Smith specifically criticized Dr. Respress's ability to hear, retain and apply information conveyed during meetings to her work.

43. This was devastating for Dr. Respress, as Ms. Smith was fully aware that Dr. Cole-Lewis had unreasonably refused to permit the use of meeting transcriptions – an accommodation Dr. Respress had specifically requested to help her process and apply information communicated during meetings with her managers.

44. Approximately two weeks later, in early February 2025, Dr. Respress filed a complaint with Google's accommodation team that she was being discriminated against based on her disability, her managers were not following her disability accommodations, and she was experiencing retaliation for requesting accommodations.

45. On Thursday, February 20, 2024, Dr. Respress was interviewed by a member of Google's employee relations team as part of their investigation into her complaint.

46. The following Monday, February 24, 2024, Ms. Smith terminated Dr. Respress. Google claimed it was for performance issues. But this stated reason for terminating Dr. Respress was pretext. In reality, she was terminated based on Google's failure to accommodate Dr. Respress and in retaliation for Dr. Repress making a disability accommodation request and filing an internal discrimination and retaliation complaint.

47. Ms. Smith failed to put Dr. Respress on a formal performance improvement plan prior to her termination, in violation of Google company policy.

48. Dr. Respress was terminated before she was informed about the conclusion of the accommodation investigation.

49. Dr. Respress suffered emotional distress from the working environment she endured at Google.

50. Google subjected Dr. Respress to disability discrimination and retaliation in violation of the ADA.

## COUNT I:
## VIOLATION OF AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101 *et seq.* - DISABILITY DISCRIMINATION

51. Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

52. Plaintiff is a disabled person as defined by the ADA.

53. Defendant is an employer as defined by the ADA.

54. Due to her disabilities, Autism and ADHD, Plaintiff required the ability transcribe her meetings to effectively perform the essential functions of her job.

55. Plaintiff's accommodation request was reasonable and did not present an undue burden on Defendant.

56. Defendant's accommodations team granted Plaintiff's accommodation request.

57. However, Defendant allowed Plaintiff's supervisors to refuse to abide by Plaintiff's disability accommodation.

58. Plaintiff's supervisors provided no reasonable explanation for their failure to accommodate Plaintiff.

59. Plaintiff's supervisors exhibited discriminatory animus towards Plaintiff due to her disabilities through the use of ableist language to critique her performance.

60. Plaintiff was exposed to a discriminatory work environment when she was denied equal treatment due to her disability.

61. The above-pled actions of Defendant constitute disability discrimination in violation of the ADA.

62. The actions of Defendant in subjecting Plaintiff to the above-pled adverse actions were willful, deliberate, and intended to cause Plaintiff harm, and/or were committed with reckless disregard for the harm caused to Plaintiff, and were in derogation of his federally protected rights.

63. Plaintiff's disability was the basis for the decisions by Defendant to subject her to the adverse actions as pled above.

64. As a direct and proximate result of Defendant's adverse actions, Plaintiff has suffered damages, including but not limited to loss of past and future income and employee benefits, mental anxiety and emotional distress, and loss of professional reputation.

## COUNT II:
## VIOLATION OF AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101 *et seq.* – RETALIATION

65.    Plaintiff incorporates by reference paragraphs 1 through 50 of this Complaint.

66.    In October 2024, Plaintiff participated in a statutorily protected activity by contacting Defendant's disability accommodations department and (1) complaining that her supervisors were not adhering to her previously approved accommodations; and (2) requesting accommodations due to her disability.

67.    In February 2025, Plaintiff participated in a statutorily protected activity by submitting an internal complaint to Defendant's accommodations team that she was subject to illegal disability discrimination and retaliation through the failure of her supervisors to adhere to her disability accommodations.

68.    Defendant retaliated against Plaintiff by terminating her employment due to her request for accommodation and complaints that she was subject to discrimination and retaliation.

69.    As a direct and proximate result of Defendant's adverse actions, Plaintiff has suffered damages, including but not limited to loss of past and future income and employee benefits, mental anxiety and emotional distress, and loss of professional reputation.

## REQUEST FOR RELEIF

WHEREFORE, Plaintiff requests relief and damages as follows:

a. A declaratory judgment that Defendant violated the ADA through its discriminatory treatment and termination of Plaintiff;

b. A grant of monetary judgment in favor of Plaintiff and against Defendant awarding all economic, liquidated, compensatory and punitive damages available under the law;

c. Attorneys' fees and costs incurred by Plaintiff in filing this action to the extent allowed by law;

d. Award of pre- and post-judgment interest to Plaintiff on all damages; and

e. Any other legal or equitable relief the Court deems appropriate.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Dr. Respress

demands a jury trial on all issues so triable

Date: July 2, 2025                    Respectfully submitted,

*/s/ Ethan C. Goemann*
Ethan C. Goemann (GA Bar No. 326816)
**SOMMERS SCHWARTZ, P.C.**
One Towne Square, 17th Floor
Southfield, Michigan 48076
Tel: 248-746-4050
egoemann@sommerspc.com

*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2025, a copy of the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system, which will automatically send an e-mail notification of this filing to all counsel of record.

*/s/ Ethan C. Goemann*
Ethan C. Goemann