## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

EBONY RESPRESS,                      )
                                     )
    Plaintiff,               )
                                     )
v.                                   )        CIVIL ACTION NO.
                                     )        1:25-cv-03692-SDG-RGV
GOOGLE, LLC,                         )
                                     )
    Defendant.               )

## <u>DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>

It is undisputed that Google provided Plaintiff every accommodation she requested. She insists Google approved a transcription accommodation on the one hand but then took it away with another. But her insistence on this has no record support. She agreed to an accommodation to have meetings transcribed so long as all meeting participants consented. When a participant withheld that consent, they provided Plaintiff written notes instead. So she got an effective accommodation, even if it is one she now – for the first time, in litigation – claims was not the one she preferred. That fact pattern does not go to a jury.

Plaintiff also claims the alleged failure to accommodate (which never happened) somehow caused her poor performance that led to her termination, even though her poor performance predated her attempt to accommodate herself out of performance management. But the truth is that Plaintiff could not do her job even

with effective accommodations.  That means she was not qualified.  And because she does not meaningfully challenge that her performance was poor, this again is not a fact pattern for a jury.

## I.    Plaintiff Admits Defeat Under *McDonnell Douglas*.

Plaintiff starts her opposition to summary judgment by claiming the production shifting framework of *McDonnell Douglas* does not apply (Doc. 39 at 2, 7-9, 20-21).  That claim, if followed, would lead the Court down the wrong legal path.

The holding in *Ismael v. Roundtree*, on which Plaintiff heavily relies, did not displace *McDonnell Douglas* with a "convincing mosaic" analysis; it said the latter analysis comes when the former fails.  161 F.4th 752, 761 (11th Cir. 2025).  So by arguing only "convincing mosaic," Plaintiff waves the white flag of surrender on *McDonnell Douglas*.

This is a tacit admission of the weakness of her circumstantial evidence. *McDonnell Douglas* has been around for roughly 50 years and is a well-understood framework for determining whether summary judgment is appropriate.  While "it is not the only game in town," *Ismael*, 161 F.4th at 763, it is still *the first base an employment discrimination plaintiff must round*.  Plaintiff has not done so here.

The convincing mosaic analysis requires evidence of pretext but does not require an employee to disprove an employer's legitimate reasons.  *Id.* at 761-63.  So

by Plaintiff skipping any argument about the latter, the Court determines whether summary judgment is appropriate against the backdrop of Google's legitimate, non-discriminatory reasons being uncontested. That posture favors Google substantially because the case now proceeds without Plaintiff being entitled "to a presumption of discrimination." *Coleman v. Morris-Shea Bridge Co., Inc.*, Nos. 21-13764, 22-10239, 2026 U.S. App. LEXIS 5856, at *9 (11th Cir. Feb. 27, 2026).

## II.    The Circumstantial Evidence Shows Google Accommodated Plaintiff But She Was Still Performing Unacceptably.

A convincing mosaic may exist where there is evidence of suspicious timing, ambiguous statements, systematically better treatment of similarly situated employees, or that Google's reasons are pretextual. *Ismael*, 161 F. 4th at 760. Plaintiff presents none of that here.

Plaintiff does not argue that Google's reasons are pretextual, as already noted. The Court can pretermit that analysis.

Plaintiff does not point to systematically better treatment of employees. She claims the Eleventh Circuit explicitly rejected an analysis of "whether a comparator exists" (Doc. 39 at 9). That is not so. The absence of better treatment of similarly situated employees is still directly relevant to a convincing mosaic analysis. *Id.*; *Coleman*, 2026 U.S. App. LEXIS 5856, at *14 (analyzing "comparator" evidence when conducting a convincing mosaic analysis); *Howell v. Baldwin Cty. Bd. of Educ.*, No. 24-11099, 2026 U.S. App. LEXIS 10925, at *18 (11th Cir. Apr. 17, 2026).

3

So the lack of comparator evidence is another failure of Plaintiff to point to a genuine issue of material fact.

What Plaintiff does offer is neither convincing nor a cohesive mosaic. She reiterates her argument that Google granted her transcription accommodation but made it subject to meeting participants' consent (Doc. 39 at 10-11). She claims this was unsupported by policy, but that claim is wrong as explained in Google's reply in support of its statement of material facts ("SUMF Reply"), filed with this reply. Her argument also ignores that she was, in fact, allowed to record the majority of meetings she attended, and when she was not allowed, she admits she was given written notes (SUMF Reply ¶¶ 74, 76).

Plaintiff frames the issue as a failure to accommodate without a showing of undue hardship (Doc. 39 at 11-13). That framing misconstrues the concept of undue hardship. Google never invoked it because it *did not deny any of Plaintiff's accommodations*. As Plaintiff herself admits, "Google said yes to all accommodation requests Plaintiff made" (SUMF Reply ¶ 62). Plaintiff's framing also misconstrues the record. She asserts participant consent was not in Google's Recording Policy, that it was not in her written accommodations, and that transcriptions were universally vetoed (Doc. 39 at 12). All of those assertions are wrong. Google's accommodations team identified two areas of the policy requiring consent, confirmed that understanding with the Recording Policy owner and

4

Google's legal team, put it in writing, and discussed it with Plaintiff (SUMF Reply ¶¶ 62-66). And as already noted, Plaintiff was given written notes when she was not permitted to transcribe meetings (SUMF Reply ¶¶ 74, 76).

Plaintiff's real argument, then, is not that she was denied an accommodation altogether but instead that she was denied the one she wanted. Again, Google told her the transcription accommodation required consent at the time it approved this accommodation (SUMF Reply ¶ 66). She can point to no record evidence she objected then that she even wanted a different accommodation. Instead, she raised her objections for the first time in this lawsuit. But even putting that curiosity aside, she is not entitled to the accommodation of her choosing, just an effective one. *Stewart v. Happy Herman's Cheshire Bridge*, 117 F.3d 1278, 1285 (11th Cir. 1997).

On that note, Plaintiff argues the provision of written notes was not an effective alternative (Doc. 39 at 14). She cites literally nothing in the record to support this argument. She also cites no logical reason to support this argument, contending written notes are somehow inferior to a "real-time transcription." Both are written artifacts of spoken language. And if she really needed "real-time transcription," she admits Smith considered closed captioning as an alternative to transcription (SUMF Reply ¶ 73).

Plaintiff next argues there is a genuine issue as to whether she was qualified to do her job (Doc. 39 at 14-17). She starts by arguing her "moderate impact"

5

performance rating under Smith does not show a lack of qualification (*Id.* at 14-16). But she is knocking down a straw man that she alone set up, as Google never argued her performance rating showed a lack of qualification (Doc. 38 at 14-15). Google instead pointed out Plaintiff's job requirements and that she could not do them even with accommodations in place (*Id.*). That is because functions are essential when "the reason the position exists is to perform" those functions. 29 C.F.R. § 1630.2(n)(2)(i). And as already argued, Plaintiff has not disputed she was unable to manage programs despite being a program manager.

But if it would assist the Court for Google to engage with Plaintiff's arguments, there can be no doubt they do not prevent summary judgment for Google. Plaintiff first argues about her informal accommodations and successful performance reviews under Horn (Doc. 39 at 15). Horn was not a decisionmaker in this case, Plaintiff's job was restructured after Horn (SUMF Reply ¶¶ 10, 12), Horn's performance ratings are inadmissible hearsay, and Horn gave negative feedback about Plaintiff (SUMF Reply ¶¶ 50-51). Horn does nothing to show Plaintiff could do her job.

Plaintiff also notes her "moderate impact" rating does not mean completely unsuccessful and was decided the same month Plaintiff's accommodations were approved (Doc. 39 at 15-16). What she does not note but should is that she admits she was subsequently given performance warnings by two different managers

(SUMF ¶¶ 85, 91). Plaintiff also admits that her manager continued to document deficiencies in Plaintiff's performance (SUMF ¶¶ 92-93) and that her key stakeholder did not observe improvements in Plaintiff's work products but actually thinks she got worse (SUMF ¶¶ 94-95).

Plaintiff's final argument about qualifications is that Google did not document them and instead relies on generalities (Doc. 39 at 16-17). This argument misreads the record. Google had documentary evidence of Plaintiff's essential functions but was only required to formally document them as part of the reasonable accommodation process if Smith contended an accommodation would eliminate essential functions; Smith made no such contention here (Response to Plaintiff's Statement of Additional Material Facts ¶¶ 25-26) ("SAMF Response," filed contemporaneously). The argument also misreads the law, as the determination of essential functions is a flexible inquiry. Google's judgment as to essential functions is probative evidence. 29 C.F.R. § 1630.2(n)(3)(i). So are the job expectations and role profiles Google documented before Plaintiff requested accommodations (SAMF Response ¶¶ 25-26). *Id.* § 1630.2(n)(3)(ii). So are the consequences of Plaintiff not performing the job, like Cole-Lewis's team suffering from a backlog (SUMF Reply ¶ 60). *Id.* § 1630.2(n)(3)(iv).

The only convincing mosaic here is that Plaintiff was not qualified. She counters, pointing to evidence about Horn (Doc. 39 at 17-18). But as already

explained, that evidence suffers from a mixture of irrelevance and inadmissibility. She claims Smith "resisted" accommodations approved by Horn (*Id.* at 18). But she offers nothing more than her conclusory testimony about that; she did not identify a single incident of an allegedly denied accommodation until the fourth quarter of 2024 (SAMF Response ¶ 9). She rehashes her arguments that effective alternatives should be treated as an outright denial and that Google somehow failed to document essential functions (Doc. 39 at 18-20). But Google has already shown those arguments fail.

Plaintiff next points to allegedly "ableist" comments from Smith and Cole-Lewis that Plaintiff needed to engage in "active listening" (Doc. 39 at 20). In doing so, she misstates that Cole-Lewis was her manager despite Plaintiff admitting otherwise (*Id.*; SUMF ¶ 15). *See Williams v. Hous. Auth. of Savannah, Inc.*, 834 F. App'x 482, 490 (11th Cir. 2020) ("Evidence of discriminatory comments by non-decisionmakers unrelated to the employment decision at issue is generally 'too weak to raise a genuine fact issue.'"). She claims these statements targeted her "auditory-processing limitations," but those are not established in the record (SAMF Response ¶ 15). She claims these comments were incorporated in the decision to terminate her employment (Doc. 39 at 20). They were not (SAMF Response ¶ 24). Cole-Lewis does not recall ever making such a statement, a fact Plaintiff has not challenged (SUMF Reply ¶ 106). And Plaintiff points to no specific time or place

8

these comments ever happened. Her conclusory testimony about this issue is, at best, a weak issue of fact that will not preclude summary judgment. *Chapman v. AI Transp.*, 229 F.3d 1012, 1025 n.11 (11th Cir. 2000).

Finally, Plaintiff argues Smith denied the transcription accommodation because she found it creepy and uncomfortable (Doc. 39 at 20). Omitting the many other reasons Smith gave for her decision does not make those reasons less real. Specifically, Smith testified that transcribing one-to-one meetings was not customary, the transcription tool would often get things wrong, it acted like a third party in a two-party meeting, and could make people uncomfortable (SUMF Reply ¶¶ 68-72). And as already noted, she considered and provided alternatives that Plaintiff cannot show were ineffective by any citation to the record.

In sum, the record tells a narrative that does not warrant going to a jury. Plaintiff performed poorly at her job. She tried to avoid performance management by requesting accommodations. Google engaged in the interactive process and gave Plaintiff every accommodation she requested. One of those accommodations was for transcription and required consent. Plaintiff knew and did not complain. She had time to acclimate to her accommodations. She was still bad at her job. Google therefore terminated her employment. This is not a failure to accommodate or disability discrimination; this is an unfortunate situation of an employee who was not qualified to do her job even after Google fulfilled its legal obligations to

accommodate her.  The Court should grant summary judgment to Google.

## III.    There Is No Evidence of Retaliation.

Plaintiff disclaims her own pleading to try and avoid summary judgment on her retaliation claim (Doc. 39 at 21-23).  But that will not save her claim.  The factual sequence Google laid out is still supported by record evidence instead of Plaintiff's complaint (SUMF Reply ¶ 101).  Regardless, Plaintiff cannot dispute that Smith began managing Plaintiff's performance nearly a year before her complaint (Doc. 38 at 17).  Even if Google did not have a date showing Plaintiff's allegedly protected activity came *after* the decision to terminate her, she is not absolved of her burden of proof or her burden of showing a genuine dispute of a material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Here, Plaintiff can cite no evidence she filed her complaint before the decision to terminate her, or even if she did, that Smith or Gulledge knew about the complaint.  That warrants summary judgment for Google.

Respectfully submitted this 1st day of June, 2026.

**JACKSON LEWIS P.C.**

*/s/ Jeffrey S. Wilson*
Jeffrey S. Wilson
Georgia Bar No. 119898
Jeff.wilson@Jacksonlewis.com

*/s/ Najmah James*
Najmah James
Georgia Bar No. 867659
najmah.james@jacksonlewis.com

10

171 17th Street, Suite 1200
Atlanta, Georgia 30363
Telephone: (404) 525-8200
Fax: (404) 525-1173

*Attorneys for Defendant*

## <u>CERTIFICATION</u>

In accordance with Civil Local Rules 5.1(C) and 7.1(D), I certify that this document has been prepared in 14-point, Times New Roman font.

*/s/ Jeffrey S. Wilson*
Jeffrey S. Wilson
Georgia Bar No. 119898

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |  |
|---|---|---|
| EBONY RESPRESS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO.: |
| v. | ) | |
| | ) | 1:25-cv-03692-SDG-RGV |
| GOOGLE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day of June, 2026, a copy of the foregoing

**GOOGLE'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** was filed with the Clerk of the Court via the NextGen system which will automatically send an email notification of such filing to the following counsel of record:

Ethan C. Goemann
Sommers Schwartz, P.C.
One Towne Square, 17th Floor
Southfield, MI 48076
egoemann@sommerspc.com

*Attorney for Plaintiff*

*/s/ Jeffrey S. Wilson*
Jeffrey S. Wilson
Georgia Bar No. 119898

13